# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 1998-KA-01123 COA

**WHITNEY GLENN ISHEE**                                                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                                    **APPELLEE**

| | |
|---|---|
| DATE OF TRIAL COURT JUDGMENT: | 7/21/1998 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | NESHOBA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | EDMUND J. PHILLIPS, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: CHARLES W. MARIS, JR. |
| DISTRICT ATTORNEY: | KEN TURNER |
| NATURE OF THE CASE: | CRIMINAL-FELONY |
| TRIAL COURT DISPOSITION: | ATTEMPTED SEXUAL BATTERY (SECOND OFFENDER). SENTENCED TO SERVE A TERM OF 30 YEARS IN MDOC |
| DISPOSITION: | AFFIRMED-08/29/2000 |
| MOTION FOR REHEARING FILED: | 9/27/2000; denied 11/21/2000 |
| CERTIORARI FILED: | 12/20/2000; granted 3/1/2001 |
| MANDATE ISSUED: | |

EN BANC

SOUTHWICK, P.J., FOR THE COURT:

¶1. The defendant was convicted of attempted sexual battery. On appeal he argues that no overt act was ever charged or proved, that prosecutor misconduct occurred during voir dire, that an improper closing argument was permitted, and that the sentence exceeded the statutory maximum. We disagree with these allegations and affirm.

## STATEMENT OF FACTS

¶2. The facts are not in significant dispute. It is the legal effect of the events that form the basis for several of the appellate issues.

¶3. In April 1998 a mother and her nine-year old son were in a check-out line at the Wal-Mart store in Philadelphia, Mississippi. While the mother remained in line, she sent her son back to the appropriate aisle

to get a box of cereal. Once the boy got to that aisle, the defendant Whitney Glenn Ishee approached him. Ishee asked, using the vernacular, if he could engage in fellatio on the nine-year old. Simultaneously with the verbal request, Ishee pointed to his own genitals. The boy refused, and the encounter ended. Ishee never touched the boy nor made any effort to restrain him.

¶4. When the youngster got back to his mother, he told her what had happened. His explanation then and at trial indicated that he understood the request. Ishee was arrested.

## DISCUSSION

### 1 & 2. Defects in Indictment and insufficiency of evidence

¶5. Both of Ishee's first two issues raise the same legal question - did he engage in an overt act sufficient to prove an attempt to commit a sexual battery?

¶6. One form of sexual battery involves sexual penetration with a child under fourteen years old. Miss. Code Ann. § 97-3-95(1)(d) (Supp. 1999). Our issue is whether the accused did enough for his acts to constitute an attempt. This state has a general attempt statute. It provides that when a person endeavors to commit a crime "and shall do any overt act toward the commission thereof, but shall fail therein, or shall be prevented from committing the same," he is guilty of an attempt. Miss. Code Ann. § 97-1-7 (Rev. 1994).

¶7. The Mississippi Supreme Court has quoted approvingly these descriptions of "attempt":

> The textwriters point out in 22 C.J.S. *Criminal Law* § 75(2) (1961) at 232 that: "In a considerable number of cases it has been said the act must be such as will apparently result, in the usual and natural course of events if not hindered by extraneous causes, in the commission of the crime itself, and an act apparently adapted to produce the intended result is sufficient to constitute the overt act essential to an attempt."

> It is said by the textwriter of 1 Wharton, Criminal Law and Procedure § 74 (1957): "To constitute an attempt, there must be an act directed to the commission of an intended crime, which act goes beyond mere preparation and is apparently suited for the intended purpose, although it may be any act in the series of acts which would ordinarily result in the commission of the crime, and need not be the last or final step in the sequence. Whether an act has passed beyond the stage of preparation and constitutes an attempt is a question of degree.

> "It is also variously stated that an attempt is a direct movement toward the commission of the crime after the preparations have been made; that the defendant's act must be a direct, unequivocal act toward the commission of the intended crime; that his acts must have progressed to the extent of giving him power to commit the offense and nothing but an interruption prevented the commission of the offense; that the defendant's act must reach far enough toward the accomplishment of his intention to commit the offense to amount to a commencement of the consummation or to be a step in the direct movement toward its commission; and that some appreciable fragment of the crime must be committed so that the crime would be completed if the defendant were not interrupted."

*Bucklew v. State,* 206 So.2d 200, 202-03 (Miss. 1968).

¶8. Though lengthy, these statements are explaining something at once simple and slippery. To have

committed an attempt, the accused must have left behind merely thinking about a crime or trying to get into a position to begin committing it. He must instead have commenced the performance of the crime itself. To determine just where Ishee was in the process, it would be helpful to consider different benchmarks in the progress of a criminal event, beginning with the accused's first thought of committing the crime and ending with its completion.

¶9. First is the planning. Various individuals could be involved, though here there was no one else besides the accused and the victim who are mentioned as participants.

¶10. Secondly there could be physical movement by the perpetrator after the planning and prior to any acts that constitute elements of the crime. That might be included within the category of "preparation," i.e., the accused's placing himself in a position to begin committing the crime. Here, the planning to commit a sexual battery on a young boy at this grocery store could have occurred at Ishee's residence, and then he could have traveled to the grocery store without any further planning. That would be preparation. So far no criminal liability has arisen.

¶11. Only planning and preparation exist until there occurs some direct, unequivocal act which would lead to the crime's commission unless interrupted by external causes.

¶12. To reiterate, the law on attempt is that there must be an intent to commit the crime charged, an overt act, and a failure to complete the crime. The overt act is seen as the problem here, and perhaps in a related fashion the failure to complete the crime is said not to result from some extraneous interruption in the process started by the overt act. All we have is the accused's request of this boy to engage in the sexual battery, and an acceptance of the boy's refusal.

¶13. No scientifically precise description is available regarding when an accused has left the preparation stage and has entered the attempt stage. What is necessary is that "some appreciable fragment of the crime must be committed so that the crime would be completed if the defendant were not interrupted." *Bucklew*, 206 So. 2d at 203. With an attempt, the intent to commit all the elements must exist but often none of the physical acts will have occurred. The crime of sexual battery requires that a defendant have engaged in sexual penetration with a child under the age of fourteen. Miss. Code Ann. § 97-3-95(1)(c). This was a child of the proper age, but the crime is not committed until penetration occurs. All acts of the attempt stage would be prior to that time.

¶14. We analyze now the proper stage in the continuum from planning through completion to place what occurred here. It is easy to see this event as a solicitation to engage in sexual activities. The boy was not of the age to consent, so obtaining his agreement to engage in the crime would not constitute legal consent. There is no general solicitation statute similar to the general attempt statute. Soliciting the commission of a crime was recognized as a crime at common law. Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 6.1 (1986). We have a statute that provides that "every offense not provided for by the statutes of this state shall be indictable as heretofore at common law." Miss. Code Ann. § 99-1-3 (Rev. 1994). The supreme court has enforced this provision, though there are certain requirements for its application. *See State v. Allen,* 505 So. 2d 1024, 1025 (Miss. 1987). Whether solicitation of the statutory crime of sexual battery would be considered an "offense not provided for by the statutes" would take some

analysis that is unnecessary here.

¶15. A more fruitful examination is whether solicitation of a minor to engage in what would be sexual battery is distinguishable from an overt act or is just one kind of overt act. Most of the case law on solicitation from other jurisdictions has involved an actor who is trying to engage another competent adult to commit a crime for him, such as to perform a murder or a burglary. American Law Institute, Model Penal Code §5.02 (1985). What the solicitation here constituted was an enticement of a youngster to permit a sexual crime to be committed upon him. The criminal effect of the enticement little depends on its details. Had the accused offered a gift if the boy would go to a back room with him, or threatened him if he did not, but nothing occurred after the offer, the stage of the crime and the responsibility for the event would essentially be the same as in this case.

¶16. In various ways a person can attempt to lure a minor into a sexual encounter that would be a battery. Is the luring an overt act towards committing the crime?

¶17. Several factors lead to the finding that this is an attempt. Ishee took substantial steps towards committing this crime. He was physically at the scene in which the encounter would necessarily begin and physically adjacent to the boy as he attempted to attract him to his designs. The manner in which the defendant wanted to commit the crime was not by force, but by the child victim's willing (though not qualifying as legally consensual) participation. Unless Ishee physically compelled the boy, something that would likely have garnered too much attention in this public place, that refusal was the extraneous interruption in the crime. Nothing stopped its continuation except the boy's refusal. If instead the boy had agreed to go with him and the two started to walk out, the mother's stopping her son would be a later interruption of the attempt. In either case, though, the attempt began with Ishee's entreaties.

¶18. Ishee had moved beyond planning, beyond preparation, and had begun the specific means of committing the crime that he had chosen. He attempted to commit sexual penetration of a willing child but was thwarted at the initial stage of the crime by the boy's refusal.

¶19. Mississippi has a limited version of a specific "anti-luring" statute. It is a crime to entice a child under fourteen "with intent to detain or conceal such child from its parents," without regard to the specific purpose of the concealment. Miss. Code Ann. § 97-5-5 (Rev. 1994). The statute also prohibits enticing for purpose of "prostitution, concubinage, or marriage," but that is an alternative to proving that the purpose was to conceal from the child's parents. *Id.* A luring statute that more specifically covers acts such as those committed by Ishee might be useful, but the attempt statute applies to Ishee's conduct since his words made clear just what he was attempting.

¶20. The dissent makes a thoughtful but contrary interpretation of these facts and legal precedents. We do not question that the dissent is striving to uphold all judges' sworn obligation to be guardians of the law, applying that law impartially such that it will be preserved against the onslaught of many different threatening forces. With equal zeal for objectivity, the majority is engaged in the same task. That divergent conclusions are reached means that we have different interpretations of the precedents, not that we have conflicting goals for the endeavor.

¶21. We first take note of a precedent that the dissent finds convincing, *West v. State*, 437 So. 2d 1212 (Miss. 1983). Certainly that case involved a conviction for sexual battery in which the issue was whether the accused had committed an overt act. The reason for reversal was not that the defendant had proceeded too

briefly along the road from planning through preparation to commission. Instead, it was reversed because it remained ambiguous whether sexual penetration of his victim was intended even after the accused had proceeded very far indeed. He had inveigled his victim inside his apartment, then without her consent felt her breasts, spoke suggestively to her, and exposed himself. As the court said, "West had every opportunity to penetrate if he had wished to do so," but never did. *Id.* at 1214. West never said that he intended to do anything beyond what he committed. For all the evidence indicated, what he intended was just the acts that he did and those were not sexual battery. Even assuming, though no evidence existed, that initially the accused had an intent to commit the actual sexual penetration, "that intent had dissipated by the time he committed his so-called 'overt acts'. Whether he lost his nerve, changed his mind, or whatever, his failure to consummate the crime of sexual penetration was obviously his own decision." *Id.* Absent proof both of intent and that an extraneous cause interrupted the crime, he could not be convicted for attempted sexual battery. *Id.*

¶22. In Ishee's effort to convince this young boy to permit a sexual act to be performed upon him, there was no ambiguity. After that announcement of intent, Ishee was thwarted by the extraneous cause of the boy being unwilling to go along with him. Though the dissent argues that this makes all rejected requests for sexual favors an attempted rape or battery, the holding is much more limited. The youth was not of an age to consent, and thus to engage in sexual activities with him is a crime even if he does so willingly. We are focusing on the facts that Ishee found a nine-year old boy in a place away from the oversight of others who might be concerned for his welfare and sought the youth's cooperation in a sexual act. On such facts an accused can be found to have committed a direct and unambiguous overt act that is intended to lead to the commission of a sexual battery.

¶23. The hypothetical situation that the dissent extracted from the *West* opinion is quite helpful in the analysis. "If one walks into a bank with a loaded pistol in his pocket intending to rob the bank and walks up to the teller's window, but then changes his mind, he has not committed the crime of attempted bank robbery. *See Smith v. State*, 279 So.2d 652, 653 (Miss.1973)." *Id.* We can quite agree. Yet if the person contemplating bank robbery goes one step further and informs the teller that he has a pistol in his pocket and wants all the money placed in a bag, then the attempt has begun. He is no longer loitering and hesitating as he contemplates whether to commit the crime. He has approached and imposed on a victim the first, definite and necessary public step in his scheme.

¶24. For that bank teller or for this young boy, the crime has begun. That something might still stop it before completion is not the concern of the victims nor of the law. When the dissent states that this means that there can be no abandonment of an attempt, the response is that there is no evidence here of abandonment, only frustration. Had the boy willingly gone with Ishee, there would have been more time for Ishee to have changed his mind about his plans. Speculation about that occurring would be similarly available for any crime that had not proceeded beyond the attempt stage. What is important is whether the attempt itself has occurred. We have found that it did.

¶25. We conclude that neither the indictment that charged this overt act nor any weakness in the evidence that proved it forms a basis for reversal for the conviction.

### 3. *Impropriety of sentence*

¶26. The sentence imposed here was thirty years. Had he committed a sexual battery, Ishee as a second offender could have been incarcerated for as long as forty years. 1995 Miss. Laws ch. 596, § 15; revised

Act codified Miss. Code Ann. § 97-3-101 (Supp. 1999). The sentence for an attempt of a non-capital crime can be the same as for the crime itself. Miss. Code Ann. 97-1-7 (Rev. 1994).

¶27. At trial and now on appeal, Ishee points out that the same statute provides that if the conviction is for an attempt to commit a capital crime, the maximum sentence is only ten years. *Id.* Ishee argues that punishing an attempt to commit a non-capital crime more severely than a capital one is illogical, which it may be, and "misconstrues legislative intent," which it most certainly does not. The statute unambiguously provides the dichotomy noted by Ishee's counsel.

¶28. We must look back over 150 years to find a statutory code that treated the sentencing for attempt differently than section 97-1-7 does today. The 1848 Code provided for a ten year sentence for an attempt to commit a capital crime, and a multi-category list of lesser punishments for attempts of other crimes. Miss. Code ch. 64, art. 12, Title 8(3) (1848). Every other code that has had a section on sentences for attempts has taken the approach of the present statute. *E.g.,* Miss. Code ch. 64, art 20 (1857). It appears that at least in that 1857 Code, there were many more capital crimes than today, while very few non-capital crimes had sentences longer than ten years. Miss. Code ch. 64 (1857) (over 200 crimes; only seven non-capital crimes had sentences more than ten years).

¶29. If that explains the original basis to sentencing for attempts, it is not necessarily invalid to continue the approach even though non-capital crimes with lengthy sentences are now numerous. If there is a defect, it is not suggested on this appeal when the argument solely is that applying section 97-1-7 as written misconstrues legislative intent.

### 4. Closing argument

¶30. In the prosecutor's summation for the jury, he responded to a defense argument:

> The defense asked you to think about what kind of message you would be sending if you find - what kind of terrible message you would be sending if you find the Defendant guilty. Think about this: What if you find him not guilty? What message are you sending then? You are saying these sexual predators can go to Wal-Mart and cruise for nine year olds all day long and ask them to perform perverted sexual acts until one of them finally says yes, and then it's a crime.

Continuing with this theme, the prosecutor later said this:

> The way to stop it is to tell the Glenn Ishees of the world you can't go to a public place like that and wait for a young child to be by himself and then swoop down on him and try to commit perverse sexual acts, because if you do, you are going to have to answer to that.

> One way or the other, we are going to send a message with this verdict. I hope it's a message that we all can live with in Philadelphia and feel like our kids are safe to go to stores in Philadelphia.

¶31. The legal defect in such arguments is that they at least in part encourage jurors to consider factors other than what is in the court's instructions to them. Prosecutors may respond by saying that such arguments also encourage jurors to make the tough decision of finding guilt when the evidence requires it. That may be, but on balance the potential that it encourages jurors to loosen their dependence solely on the law and evidence makes it error.

¶32. Though error, such argument has not usually been found to cause reversal. *Williams v. State*, 522 So.2d 201, 209 (Miss.1988). Here, it can also be argued that the prosecutor's statement was permissible because the defense counsel in his own jury argument had injected into jury deliberations the notion that a message needed to be sent. Defense counsel said that conviction would give a harmful message to the next person considering asking a young child to engage in sexual acts. If Ishee were convicted, that next person who "has the same thoughts" will understand that he has "reached the point of no return, and he might as well commit the act." This jury argument notwithstanding, the conviction was not based on deviant thoughts. Thoughts were replaced with action when Ishee sought to lure a young boy to have a sexual battery performed upon him.

¶33. We do not decide if the invitation given by the defense to discuss community messages was exceeded by the response. Fundamental to our appellate task is the need that an issue be raised below and the trial court be given an opportunity to address it. Here counsel did not object that the prosecutor was improperly asking the jury to "send a message." Without either an objection or at least the "send a message" issue's being raised in the motion for new trial, the complaint is waived. *Turner v. State*, 721 So.2d 642, 646 (Miss. 1998).[(1)]

### 5. *Voir Dire*

¶34. The final argument is that the prosecutor made improper comments during voir dire.

¶35. The district attorney informed the jury that after the grand jury issued an indictment, it was the obligation of the State "to get the ball rolling" at trial, and that it had the "burden of proof or the responsibility of going forward by calling witnesses." Ishee argues that it was improper for the prosecutor to assume the judge's responsibility of explaining the law and, secondly, that the description was erroneous because the State did not just have the burden of "going forward."

¶36. Ishee also argues that error occurred when the jurors were asked by the prosecutor if they understood that once the State has put on evidence "and you are convinced that the Defendant is guilty, that he no longer enjoys that presumption of innocence, it's erased? Does everyone understand that?" That is said to be the seeking of a pledge from the jury.

¶37. Instructions given by the court at the end of trial explained that a defendant's presumption of innocence "abides with him throughout the trial of the case until the evidence convinces you to the contrary beyond all reasonable doubt." If any echoes of the prosecutor's statements during voir dire lingered during post-trial deliberations, this instruction certainly overwhelmed them.

¶38. As with the issue regarding the closing argument, here too there was no contemporaneous objection to the statements. We do not address whether there was any error in the fairly innocuous explanations that are the basis of complaint here. We do hold that there was no plain error that must now be the basis of reversal.

¶39. **THE JUDGMENT OF THE CIRCUIT COURT OF NESHOBA COUNTY OF CONVICTION OF ATTEMPTED SEXUAL BATTERY (SECOND OFFENSE) AND SENTENCE OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO NESHOBA COUNTY.**

**McMILLIN, C.J., LEE, MOORE, MYERS, AND PAYNE, JJ., CONCUR.**

**IRVING, J., DISSENTS WITH SEPARATE OPINION, JOINED BY KING, P.J., BRIDGES AND THOMAS, JJ.**

IRVING, J., DISSENTING:

¶40. The facts of this case are despicable. The request made by Ishee to this young child is revolting and abominable. Ishee's action speaks of the wretchedness of his soul, void of a moral center, and reeking with the decadence and moral decay of our society. Yet, the legitimacy, credibility, and longevity of our system of justice demand that we not shrink from our sworn obligation to be guardians of the law and apply it impartially, without hesitation and with equal force to all, even to wretched souls who seemingly are bereft of any standard of decency when it comes to satisfying their insatiable sexual appetite. For this reason, I must respectfully dissent, even when I would rather join the majority on the primrose path and affirm the conviction and punishment meted out to Ishee for his dastardly act.

¶41. I agree with majority that the "facts are not in significant dispute," and I would go a step further and say that the facts are not in dispute at all. I also point out that Ishee made no "effort to convince" this young boy as the majority asserts. Ishee simply made a request which was promptly and politely denied by the young boy. To illustrate this point, it is helpful to view C.G.'s testimony. C. G. testified that he was in the checkout line at Wal-Mart with his mother when she sent him back for cereal. He said that while he was on the cereal aisle a man, later identified as Ishee, came up to him and asked him, "Can I suck your d--k?" C. G. said that he did not know what the man meant, so the man repeated the same thing, this time pointing "at his n--s." C. G. said that his response to the man's request was, "No, thank you," and returned to where his mother was in the checkout line and told her what had just happened. However, before returning to the checkout, he obtained the cereal his mother had sent him to get.

¶42. Our highest court has enunciated and pronounced with great clarity principles of law that are, without doubt, precedential beacons of light that must guide and control the deliberation we bring to bear upon the sordid facts of this case. I believe those pronouncements on what must be shown to constitute the crime of attempt to commit a criminal offense compel the conclusion that Ishee did not commit the offense of attempted sexual battery.

¶43. Ishee argues that asking a child under the age of fourteen to engage in fellatio is not by itself attempted sexual battery because "asking" is not an essential element of sexual battery. The indictment charges that Ishee "did willfully, unlawfully and feloniously attempt to commit sexual battery upon C.G., a male child under the age of fourteen (14) years, by asking the said C.G. to engage in fellatio and pointing to his penis, contrary to and in violation of Section 97-3-101, Miss. Code Ann. (1972)."

¶44. The code section referenced in the indictment sets forth the penalty for, not the crime of, sexual battery. In my opinion, to properly charge the offense of attempted sexual battery, the charge must be laid under Miss. Code Ann. § 97-3-95 (Supp. 1999), which makes sexual battery a crime, and Miss. Code Ann. § 97-1-7 (Rev. 1995) which sets forth the elements of the crime of attempt to commit an offense and prescribes the punishment therefor. Ishee did not raise this omission on appeal. Therefore, I will not address it further.

¶45. Ishee also argues that the statutory overt act must be alleged in the indictment as an essential element of the crime. I agree. In *Dill v. State*, 149 Miss. 167, 170, 115 So. 203 (1928), the court instructed that,

"[i]n a prosecution for an attempt to commit an offense, under [the attempt] statute, *it is necessary to charge* and prove some overt act done toward the commission of the offense. . . ." (emphasis added).

¶46. The indictment contains no allegation of acts other than Ishee's asking C.G. to engage in fellatio and pointing to his penis. It is Ishee's contention that the pointing was of no moment and that the entirety of the alleged crime was his asking C.G. to engage in fellatio. Ishee contends that the request to engage in fellatio is, at most, preparation for the crime, not an overt act sufficient to constitute an element of the crime.

¶47. In *Edwards v. State,* 500 So. 2d 967, 969 (Miss. 1986) (quoting *Bucklew v. State*, 206 So. 2d 200, 202 (Miss. 1968)), the Mississippi Supreme Court opined that an attempt to commit a crime consists of three elements: "(1) an intent to commit a particular crime; (2) a direct ineffectual act done toward its commission; and (3) the failure to consummate its commission."

¶48. If the acts alleged in the indictment, "asking to engage in fellatio" and "pointing at the penis," were not overt acts within the meaning of the attempt statute quoted above, then Ishee's demurrer to the indictment was proper and should have been sustained. I now examine those acts to determine their legal sufficiency.

¶49. *Blacks Law Dictionary, 6th Edition* defines "overt act" as:

> An open, manifest act from which criminality may be implied. An outward act done in pursuance and manifestation of an intent or design. An open act, which must be manifestly proved.

> An overt act essential to establish an attempt to commit a crime is an act done to carry out the intention and it must be such as would naturally effect that result unless prevented by some extraneous cause. It must be something done that directly moves toward the crime and brings the accused nearer to its commission than mere acts of preparation or of planning, and will apparently result, in the usual and natural course of events, if not hindered by extraneous causes, in the commission of the crime itself.

¶50. Ishee directs our attention to that portion of *Bucklew* where the court, quoting *1Wharton, Criminal Law and Procedure* 74 (1957), said this:

> [A]n attempt is a direct movement toward the commission of the crime after the preparations have been made; that the defendant's act must be a direct, unequivocal act toward the commission of the intended crime; *that his acts must have progressed to the extent of giving him power to commit the offense and nothing but an interruption prevented the commission of the offense;* that the defendant's act must reach far enough toward the accomplishment of his intention to commit the offense to amount to a commencement of the consummation or to be a step in the direct movement toward its commission; and *that some appreciable fragment of the crime must be committed so that the crime would be completed if the defendant were not interrupted.*

*Bucklew*, 206 So. 2d at 203 (emphasis added).

¶51. Ishee was charged with attempt to commit sexual battery. The offense of sexual battery requires sexual penetration. Miss. Code Ann. § 97-3-95 (Supp. 1999). "Sexual penetration" includes cunnilingus, fellatio, buggery or pederasty, any penetration of the genital or anal openings of another person's body by any part of a person's body, and insertion of any object into the genital or anal openings of another person's body. Miss. Code Ann. § 97-3-97 (Rev. 1994).

¶52. The offense with which Ishee was charged required the State to prove that Ishee attempted to sexually penetrate C.G. within the meaning of code section 97-3-97 quoted above but that he failed therein or was prevented from committing the same by some extraneous act. *See West v. State*, 437 So. 2d 1212 (Miss. 1983).

¶53. In *West*, Larry Van West was convicted of the crime of attempted sexual battery, the same offense for which Ishee now stands convicted. "The evidence established without serious contradiction that on March 2, 1981, *West inveigled his victim, a female student at the University of Southern Mississippi, into an apartment near where she lived, made a few suggestive comments, and without her consent, fondled her breasts, put his hand inside her panties, and later exposed himself. West,* 437 So. 2d at 1213.

¶54. The *West* court observed that the question was not "whether what West did was criminal or whether it offended sensibilities," but "whether what West did constituted the specific crime of attempted sexual battery."*Id.* In arriving at the conclusion that West's actions did not constitute the crime of attempted sexual battery, the court analyzed the following statutes: (1) Miss. Code Ann. § 97-3-95, which makes one guilty of the crime of sexual battery if he engages in sexual penetration with another person without his or her consent; (2) Miss. Code Ann. § 97-3-97, which defines sexual penetration as inclusive of cunnilingus, fellatio, buggery or pederasty, any penetration of the genital or anal openings of another person's body by any part of a person's body, and insertion of any object into the genital or anal openings of another person's body; (3) Miss. Code Ann. § 97-1-7, which sets forth the elements of the crime of attempt to commit a criminal offense.

¶55. The *West* court held that Miss. Code Ann. § § 97-3-95 and 97-3-97 must be read in combination with Miss. Code Ann. § 97-1-7 in determining whether one has committed the offense of attempted sexual battery. Section 97-1-7 reads in pertinent part as follows:

> Every person who shall design and endeavor to commit an offense, and shall do any overt act toward the commission thereof, but shall fail therein, or shall be prevented from committing the same, on conviction thereof, shall, . . . be punished. . . .

¶56. The *West* court held that its concern was whether there was sufficient evidence in the record to support the jury's verdict that Larry Van West was guilty of attempted sexual battery. The facts were uncontradicted that no penetration occurred and the prosecution, in effect, conceded that there was no attempt to penetrate. *West,* 437 So. 2d at 1214. The court held that West had every opportunity to penetrate if he had wished to do so.

¶57. Finally, the *West* court, citing *Smith v. State*, 279 So. 2d 652, 653, held that if one walks into a bank with a loaded pistol in his pocket intending to rob the bank and walks up to the teller's window, but then changes his mind, he has not committed the crime of attempted bank robbery. *Id*.

¶58. As stated, it was also necessary for the indictment to allege the overt act or acts constituting the attempt. *Dill*, 149 Miss. at 170, 115 So. at 204. The question for us is whether asking another for permission to engage in fellatio and pointing to the penis to clearly communicate the message amount to an attempt to commit sexual battery. I think the answer to the question is an emphatic "no."

¶59. While a direct ineffectual act toward the commission of a crime is one of the elements of the crime of

attempt to commit a specific crime, the ineffectualness of the act is relevant only to distinguish between the attempt and the commission of the crime. Admittedly, Ishee's request was ineffectual but had C.G. agreed to the request, the crime still could not have been consummated without additional action on Ishee's part. The fact that C.G. was a minor and could not legally consent to such an act is of no moment in our deliberation because the focus is on what action was taken by Ishee to consummate the act. Hence, the request, without more, could not have led to the commission of the offense. It is not debatable that the pointing to the penis, without more, could not have led to the commission of the offense.

¶60. The majority's effort to distinguish *West* points out even more poignantly the fallacy in the majority's reasoning. The majority says that the reversal occurred in *West* because "it remained ambiguous whether sexual penetration of his victim was intended even after the accused had proceeded very far indeed." Majority opinion at 7. The defendant in West "had proceeded very far indeed" and *without the victim's consent*. In other words, the majority's argument implies that the actions taken by the defendant in *West* were inconsequential and could not be placed on the continuum from planning through completion because it was unclear as to the intentions of the *West* defendant when he was fondling his victim's breasts and placing his hand inside her panties. I suppose in the view of the majority, actions do not speak louder than words. The majority then says "a ha!" We do not have that problem in our case because Ishee spoke his intentions rather than demonstrated them. To say the least, this seems to be faulty reasoning to me and a contorted way to try and waltz around the strong *West* precedent as to what must be shown to constitute an attempt.

¶61. If *West* can be reconciled with the majority's lack-of-consent-trip-wire analysis discussed later in this opinion, then whenever one asks another to engage in sexual relations and is refused, the asking party has committed either an attempted rape or attempted sexual battery even though nothing had been done in furtherance of that design. It cannot be argued legitimately that a different result is ascertainable depending on the victim's age. The reason for this is simple; the age of a victim has nothing whatsoever to do with whether another has taken acts sufficient to constitute an attempt at sexual battery. It is the action of the actor that is the focus of the overt act in an attempt case, not the conduct of the intended victim.

¶62. The majority attempts to deflect the argument -- that under the majority's analysis, the mere asking constitutes an attempt to commit the offense if the request is refused -- by positing that "[t]he youth was not of an age to consent, and thus to engage in sexual activities with him is a crime even if he does so willingly." My short answer to that is engaging in consensual sexual activities with an adult other than one's spouse is also a crime in this state. Miss. Code Ann. § 97-29-1 (Rev. 1994).

¶63. What we have here is really nothing more than a request to allow an activity to take place. The request was dishonored, and the encounter ended. To try and transform that request into an element of the intended offense, as does the majority, is a legal leap of acrobatic proportions that just cannot be made, no matter how desirous. At most, Ishee's request was nothing more than an attempt to locate a victim, not an attempt to sexually penetrate a victim. In fact, Ishee could not really start planning the ultimate act until he found a willing victim. The majority acknowledges that Ishee's motive was to find a willing victim for consummation, that he obviously did not intend to perform the act in Wal-Mart even if his victim had consented. I find the majority's discussion of what could have or might have occurred at Ishee's home before he went to Wal-Mart to be an unhelpful effort to bolster its beleaguered argument. There is no evidence in the record concerning this encounter other than what is set forth in this opinion, and there is certainly nothing in the record to suggest in the slightest that Ishee even knew C.G. would be at Wal-Mart.

¶64. In our case, the majority says it was the refusal to consent, and nothing more, that halted the completion of the crime. It seems to me that if the victim's refusal to consent is the trip wire, there would never be a need to show anything more than lack of consent on the part of the victim. Thus, under this reasoning, the State would have made its case in *West* when it showed lack of consent on the part of the victim. It would not have been necessary to proceed any further because the crime was then in progress, and as the majority says, "that something might still stop it before completion is not the concern of the victim nor of the law." Majority opinion at 8.

¶65. The *West* court noted, as quoted earlier in this opinion, that all of the acts taken by West were without his victim's consent. Why was her lack of consent not sufficient for the *West* court to conclude that the attempt had been completed? Stated another way, why was her refusal to consent not viewed -- as the majority views C.G.'s refusal here -- as an extraneous cause that thwarted the commission of the act? Viewed this way, West's later actions would have been indeed immaterial. Assuming they were not immaterial, then the focus must shift to his later actions. Clearly West intended to fondle his victim's breasts and to place his hand inside her panties. It would appear that these actions were giant steps toward constituting the ultimate offense and actions taken well before there could be any legitimate argument that he had abandoned his design.

¶66. The majority says, "West never said he intended to do anything beyond what he committed." Majority opinion at 7. With all due respect for the majority, I must say the *West* opinion does not indicate that the defendant said anything one way or the other, and to say that "West never said he intended to do anything beyond what he committed" is to imply that West made a statement of his intentions. My reading of *West* indicates that the supreme court was applying the law of attempt to a set of facts without authorship other than the assertion that it was the proof offered by the State.

¶67. The *West* court, citing *State v. Lindsey* 202 Miss. 896, 899, 32 So. 2d 876, 877 (1947), made it clear that the gravamen of the offense of attempt is that the accused have must done an overt act toward sexual penetration but failed therein or that he was prevented from committing the same." *West,* 437 So. 2d at 1214. The court concluded that the proof showed "neither an attempt nor a failure but a volitional stopping short." *Id.* The question must be asked, stopping short of what? The answer cannot be "penetration," for if penetration had occurred, the offense would have been transformed from the attempt stage to the commission stage. The only reasonable deduction is the proof regarding West's actions fell short of an attempt to penetrate. Yet the proof was overwhelming that West took several actions which can only be interpreted as acts toward the commission of the offense. To try and distinguish *West* on the basis that West's intentions were ambiguous is not to accord common sense to West's actions.

¶68. It is true that the *West* court spoke of an abandonment of intentions because no penetration occurred when there was every opportunity for that to have occurred. But as stated earlier in this opinion, if that had occurred, the offense would have been sexual battery, not attempt to commit sexual battery. Thus, the court's discussion of lack of intent in *West* is of no help to the State's case here. Further, the majority's reliance on C.G's response is of no help because as stated earlier in this opinion, even a "yes" response to Ishee's request would not have allowed the crime to be committed without additional action on the part of Ishee. How then can the "no" response be more legally potent than a "yes" response would have been?

¶69. The giant fallacy in the majority's argument is its attempt to transform the victim's lack of consent into an extraneous act that thwarts the commission of the crime. A lack of consent on the part of the victim is

always an element of the offense but never an issue unless the defendant is claiming that the activity was consensual. Further, proof of lack of consent is never sufficient to prove the crime of attempt if no overt acts have been taken toward the commission of the crime. This is true even if the proof of lack of consent is overwhelming. Under the majority's reasoning, the attempt to commit a crime like this one would be completed once the victim muttered his lack of consent, even if the defendant went on about his business, telling the intended victim as he departed, "okay, sorry I asked. Have a nice day." In our case, there is no evidence that Ishee did anything to further his design after young C.G. told him "no, thank you." Had Ishee not been arrested, it is a safe bet that he would have gone about his business. C.G. certainly went about his business. He testified that after the encounter with Ishee, he proceeded to get the cereal that he came for before returning to where his mother was.

¶70. This brings me to the ultimate conclusion that the overt acts alleged in the indictment were not sufficient to charge an attempt to commit the crime of sexual battery. Having concluded that the acts alleged in the indictment were insufficient to charge the crime of attempt to commit sexual battery, it necessarily follows that, in my opinion, the trial court erred in overruling Ishee's demurrerto the indictment. I would reverse and render the judgment of the trial court finding Ishee guilty of attempt to commit sexual battery.

**KING, P.J., BRIDGES AND THOMAS, JJ., JOIN THIS SEPARATE WRITTEN OPINION.**

1. The motion for new trial did state generically that the court had "committed error in overruling Defendant's objections to the District Attorney's improper arguments to the jury," but that obviously does not make any new objections but only incorporates those actually made during the closing argument itself.